UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CRIMINAL ACTION NO. 1:21-CR-00019-GNS-HBB-1

**UNITED STATES OF AMERICA**                                                         **PLAINTIFF**

**v.**

**JOHNATHAN COLLINS**                                                                     **DEFENDANT**

### FINDINGS OF FACT, CONCLUSION OF LAW, AND RECOMMENDATION

Before the Court is the motion of Defendant Jonathan Collins to suppress evidence (DN 27). The United States responded in opposition (DN 28). Collins filed a supplement to his motion (DN 36), and the United States responded to the supplement (DN 37). For the reasons below, the undersigned **RECOMMENDS**[1] that Collins' motion to suppress (DN 27) be **DENIED**.

### FINDINGS OF FACT

On March 9, 2021, Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agent ("SA") Bradley Brown applied for a search warrant for Collins' residence, as well as any outbuildings and a detached garage (DN 27-1). SA Brown averred in the affidavit in support of the warrant that he had been in contact with an individual identified as the Victim (Id.). The identity of the Victim was verbally revealed to the undersigned as the issuing judicial officer. The Victim had reported observing Collins exiting a vehicle and entering the residence with a firearm on March 6, 2021 (Id. at p. 2). The Victim believed the firearm was a 9mm Glock semiautomatic pistol (Id.). The Victim was further described as the mother of three of Collins' children, who

---

[1] The District Court referred Collins' motion to suppress to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed. R. Crim. P. 59(b)(1), for submission of a proposed Findings of Fact, Conclusions of Law, and Recommendations on the motion (DN 38).

frequently spent time with Collins at the residence (Id.). She reported seeing Collins in possession of firearms on multiple occasions since January of 2021 and that he kept them in the residence or the detached garage or additional outbuildings on a routine basis (Id.).

The affidavit also recounted that the Victim had reported that Collins had assaulted her on March 9, 2021, and SA Brown observed severe bruising on the Victim's face (Id.). SA Brown further recounted that Collins had a significant criminal history of domestic violence against the Victim and that local police had responded to domestic violence reports and child custody disputes between Collins and the Victim at the residence (Id. at p. 2-3). SA Brown reported having warned the Victim of the consequences of providing false information to law enforcement (Id. at p. 2). SA Brown noted that Collins was a multi-convicted felon and therefore prohibited from possessing any ammunition or firearms (Id. at p. 3). He concluded, "Your Affiant and the ATF feels the need to execute the search warrant tonight based on the history of violence and the increase in violence to the victim. This necessity is based on safety for the victim" (Id.).

The undersigned issued the search warrant, which law enforcement agents executed that same day (DN 27, p. 2). The search resulted in the discovery of a grocery bag containing a "Ziplock" style baggie containing approximately 45.48 grams of methamphetamine concealed in the soffit of the detached garage (DN 1, p. 2). Officers also located a small amount of marijuana and drug paraphernalia in the residence (Id.). Collins agreed to speak with the agents and admitted ownership of the methamphetamine (Id). On March 10, 2021, the undersigned executed a Criminal Complaint charging Collins with possession of a controlled substance with the intent to distribute (methamphetamine) (Id. at p. 3).

On the night of the arrest, Collins made a recorded telephone call from jail (DN 28, p. 2 n.1). He made statements during the call which led law enforcement agents to believe that

they had failed to discover a firearm hidden in the residence (Id.). Based on this information, agents returned to the residence, obtained consent to search, and located a 9mm semiautomatic pistol hidden in the cushions of a couch (Id.).

On May 20, 2021, the Grand Jury returned a two-count indictment (DN 15). Count 1 charges Collins with the offense of being a felon in possession of a firearm, having been convicted of three prior felony offenses in Logan Circuit Court, twice in 2006 and once in 2020 (Id.). Count 2 charges Collins with the offense of possession with intent to distribute methamphetamine (Id.).

## Collins' Motion and Supplement

Collins' original motion was filed on his behalf by his appointed counsel Donald J. Meier with the Office of the Federal Defender (DN 27). The motion argues that the evidence discovered during the search of Collins' residence should be suppressed because the affidavit did not provide any information supporting the informant's reliability (Id. at p. 4). Collins contends that the information the Victim supplied was only very general in nature, namely that he had been observed in possession of a firearm on "multiple occasions" and that he kept them in the house, garage, or outbuildings (Id. at pp. 1-2). Collins also notes that there is information in the affidavit suggesting that the informant might not be reliable, including the fact that she had been in a long-term relationship with him but had not lived with him during the period of time in question (Id. at p. 2). Moreover, the affidavit notes that she had been involved in multiple domestic violence and child custody disputes with Collins, including a very recent allegation of assault (Id.). This, he contends, demonstrates animosity on the Victim's part, and yet the affidavit was based solely on her information without any independent corroboration by the investigating officer (Id.). Likewise, he contends, the affidavit was so deficient that the agent should not be permitted to rely upon it under the "good faith" exception from United States v. Leon, 468 U.S. 897 (1984) (Id. at p. 5).

Subsequent to the filing of his motion, Collins was appointed new counsel who filed a supplement to the motion and requested a hearing under Franks v. Delaware, 438 U.S. 154 (1978) (DN 35). In his supplement, Collins challenges the veracity of the statement in the affidavit supporting the search warrant that the Victim observed Collins in possession of a firearm on March 6, 2012 (Id. at pp 1-2). Collins tenders with his supplement what appears to be a screenshot of a Chattanooga, Tennessee Hampton Inn reservation confirmation (Id. at p. 5). This, he contends, demonstrates that the Victim was not in Kentucky on March 6, 2021, and the information she provided to SA Brown was therefore false (Id. at pp. 1-2). He argues that, had SA Brown attempted to independently corroborate the Victim's allegations, he would have discovered her misrepresentation (Id. at pp. 2-3). He states he is entitled to a Franks hearing to develop the record on this point (Id. at p. 3).

## The United States' Responses

As to the sufficiency of the affidavit to establish probable cause, the United States contends that the information provided by the Victim was reasonably reliable. It notes that the Victim was not anonymous, she was warned of the consequences of providing false information, was very familiar with both Collins and the residence, and reported criminal activity close in time to the affidavit (DN 28, p. 3-4). The fact that she claimed to be a domestic crime victim, the United States argues, does not render her an unreliable witness *per se*. The sufficiency of the affidavit is measured, it contends, by what it contains, not what a critic might assert it lacks (Id. at p. 4) (quoting United States v. Allen, 244 F.3d 970, 974 (6th Cir. 2000) (*en banc*)). Moreover, even if the Court finds the affidavit did not establish probable cause, the United States argues the investigating officer nonetheless acted in good faith (Id.) (citing United States v. Leon, 468 U.S. 897, 923 (1984)). As SA Brown submitted significantly more than a "bare bones" affidavit, he

4

was entitled to rely upon the undersigned's conclusion that it supported probable cause under the Leon doctrine (Id. at pp. 4-5).

Turning to Collins' supplement to his Motion, the United States disputes that his allegations require a Franks hearing (DN 37, p. 2). Under Franks, the United States contends, Collins must make a preliminary showing "that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" (Id.) (quoting Franks v. Delaware, 438 U.S. 154, 171 (1978)). Here, it argues, Collins has only alleged a misrepresentation by the Victim, and not by SA Brown, who was the affiant (Id. at pp. 2-3).

## CONCLUSIONS OF LAW

The Fourth Amendment provides:

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. "'At the very core' of the Fourth Amendment 'stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" Kyllo v. United States, 533 U.S. 27, 31 (2001) (quoting Silverman v. United States, 365 U.S. 505, 511 (1961)); *see also* Payton v. New York, 445 U.S. 573, 585 (1980) ("[T]he 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" (quoting United States v. U.S. Dist. Court, 407 U.S. 297, 313 (1972))). The exclusionary rule typically precludes the admission into evidence of any testimony directly obtained in violation of a suspect's constitutional rights. *See, e.g.*, Edwards v. Arizona, 451 U.S. 477, 486-87 (1981). In addition, the "fruit of the poisonous tree" doctrine also bars the admission of derivative evidence that is the

product of the primary evidence or testimony obtained in violation of a person's constitutional rights. See Murray v. United States, 487 U.S. 533, 536-37 (1988).

"To establish probable cause adequate to justify issuance of a search warrant, the governmental entity or agent seeking the warrant must submit to the magistrate an affidavit that establishes 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Brooks, 594 F.3d 488, 492 (6th Cir. 2010) (quoting United States v. Berry, 565 F.3d 332, 338 (6th Cir. 2009)). This requires "a nexus between the place to be searched and the evidence sought," United States v. McPhearson, 469 F.3d 518, 524 (6th Cir. 2006), at the time the warrant is issued, United States v. Hython, 443 F.3d 480, 485 (6th Cir. 2006). The probable-cause standard is practical and nontechnical. United States v. Frazier, 423 F.3d 526, 531 (6th Cir. 2005). In other words, a reviewing court should consider the "totality of the circumstances" rather than "engage in line-by-line scrutiny of the warrant application's affidavit." United States v. Williams, 544 F.3d 683, 686 (6th Cir. 2008). But the court must limit its "review of the sufficiency of the evidence supporting probable cause . . . to the information presented in the four-corners of the affidavit." Frazier, 423 F.3d at 531. Further, an "affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." United States v. Allen, 244 F.3d 970, 975 (6th Cir. 2000) (*en banc*).

Collins argues that the information provided by the Victim was insufficient to establish probable cause to believe that he had a firearm at the residence. In weighing the reliability of a particular source of confidential information, the Sixth Circuit describes the spectrum of weight to be accorded the information as follows:

> Initially, when part of the reasonable-suspicion equation includes a tip from an informant, the weight to which that tip is entitled falls along a broad spectrum. On the one hand, tips from anonymous informants are generally entitled to little weight because they

> provide slim, if any, opportunity to assess the reliability and credibility of the individual providing the information. Thus, "[u]nlike known or identified informants, anonymous tipsters, without more, cannot be deemed reliable regarding their allegations." As the district court correctly recognized, a tip that fails to make any allegation of illegality is likewise entitled to little weight.
>
> On the other hand, tips from known or reliable informants generally are entitled to substantially more weight. Tips that provide specific details or predictions of future action fall higher on the reliability scale because they suggest the existence of knowledge to which the public might not have access. Between these two extremes is a sliding scale; "[t]hus, if a tip has a relatively low degree of reliability, more information would be required to establish the requisite quantum of suspicion that would be required if the tip were more reliable." Accordingly, the weight of an informant's tip in the overall reasonable-suspicion analysis must be determined case by case.

United States v. Williams, 483 F. App'x 21, 25 (6th Cir. 2012) (internal citations omitted); *see also* United States v. Chandler, 437 F. App'x 420, 426 (6th Cir. 2011) (Identified source has high degree of reliability due to risk of adverse consequences for providing faulty information.).

Collins' primary point of contention is that the Victim should have been viewed as an unreliable witness by virtue of her animosity toward him. This, he argues, is demonstrated by the facts that they had a contentious history of domestic violence and custody disputes, she claimed a recent assault by Collins, and she was warned about giving false information. However, the final point actually weighs in favor of the Victim's reliability as she was specifically warned that she could face consequences if she was untruthful. The United States' citation to United States v. Patane, 304 F.3d 1013 (10th Cir. 2002), *rev'd on other grounds,* 542 U.S. 630 (2004), is instructive. In light of a trial court's ruling that "domestic disputes often involve 'claims and counterclaims . . . thrown between people who have separated some sort of an intimate relationship,' and therefore that uncorroborated allegations arising from such disputes are 'just

7

inadequate' to establish probable cause," the Tenth Circuit held: "We reject any suggestion that victims of domestic violence are unreliable witnesses whose testimony cannot establish probable cause absent independent corroboration." Id. at 1016. It is true that, in this case, the Victim was reporting both her assault by Collins and his unrelated possession of a firearm. At the time she gave her statement to SA Brown, it was possible that she made a false accusation about the firearm in retaliation for the assault or was otherwise motivated by animosity. It was equally possible, however, that she reported the firearm out of fear for her own safety, as SA Brown noted in the affidavit to be a concern. A known informant's statement can support probable cause even though the affidavit fails to provide any additional basis for the known informant's credibility and the informant has never provided information to the police in the past. United States v. Kinison, 710 F.3d 678, 682 (6th Cir. 2013). Here, as the United States notes, the Victim was intimately familiar with both Collins and the residence. She reported his having firearms at the residence on a regular prior basis and that she had personally observed him bring a firearm to the residence four days earlier. Under the totality of the circumstances, probable cause existed to believe that Collins was a convicted felon in possession of a firearm. "The magistrate [judge's] determination of probable cause is afforded great deference and should be reversed only if arbitrarily made." United States v. Allen, 244 F.3d 970, 973 (6th Cir. 2000) (*en banc*).

  Even if the circumstances supported a finding that the affidavit was insufficient to support a finding of probable cause to issue the search warrant, SA Brown and other law enforcement officers were entitled to rely on it in good faith. In United States v. Leon, 468 U.S. 897 (1984), the Supreme Court modified the exclusionary rule "so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." Id. at 905.

> The good faith exception to the exclusionary rule states that the fruits of a constitutionally infirm search need not necessarily be suppressed unless: (1) the warrant contained a knowing or reckless falsehood; (2) the issuing judge acted as a mere "rubber stamp" for the police; or (3) the warrant and the affidavit, even after extending appropriate deference to the issuing judge's determination, did not establish probable cause or possessed a technical deficiency such that the executing officers cannot reasonably assume the warrant to be valid.

United States v. Logan, 250 F.3d 350, 366 (6th Cir. 2001) (citing Leon, 468 U.S. at 922-23). Here, the affidavit submitted in support of the warrant was far from bare bones and included detailed information about Collins, the Victim, and the basis for belief that evidence would be found at the residence. SA Brown reasonably believed he had authorization from a neutral judicial officer, pursuant to a detailed search warrant, to search Collins' residence and outbuildings for a firearm.

Turning next to Collins' argument for a Franks hearing, in Franks, the Supreme Court noted that "when a defendant shows that an affiant made a false statement knowingly and intentionally, or with reckless disregard for the truth, the search warrant must be voided if the affidavit's remaining content is insufficient to establish probable cause." Id. at 155-56. If the defendant makes a sufficient preliminary showing of one of these factors, the defendant is entitled to a hearing. Id. at 155. However, a "defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden." United States v. Green, 572 F. App'x 438, 441 (6th Cir. 2014) (internal quotation marks and citation omitted).

A Franks violation requires a showing of intent, "i.e., a 'deliberate falsehood' or 'reckless disregard for the truth.'" Id. at 171. More precisely, "[i]f at the hearing, the defendant can show by a preponderance of the evidence that the affiant either knowingly or with reckless disregard included a false statement in the affidavit, then any evidence and fruits of the search should be excluded." U.S. v. Rodriguez-Suazo, 346 F.3d 637, 648 (6th Cir. 2003); *see also* Franks, 438 U.S. at 156.

Collins contends that the Victim made a misrepresentation to SA Brown when she told him she saw Collins bring a gun into the residence on March 6, 2021. Collins has tendered an exhibit which he contends demonstrates that the Victim was not in Kentucky on that date (DN 35, p. 5). There are two steps in a Franks challenge. In the first step, the defendant must make "a substantial preliminary showing that [1] a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . [2] the allegedly false statement [was] necessary to the finding of probable cause." Id. at 155-56. "If the defendant alleges an affiant's 'recklessness,' the court employs a subjective test." United States v. Bateman, 945 F.3d 997, 1008 (6th Cir. 2019). The defendant alleging recklessness must show "the affiant subjectively 'entertained serious doubts as to the truth of his or her allegations.'" Id. (quoting United States v. Cican, 63 F. App'x 832, 836 (6th Cir. 2003)) (cleaned up).

A critical point of inquiry is that "[t]he intentionally or recklessly false statement must be made by the affiant herself, not the nongovernmental informant." Rodriguez-Suazo, 346 F.3d at 648 (citing Mays v. City of Dayton, 134 F.3d 809 (6th Cir. 1998)). "It is not enough . . . to show that the affidavit contains false information; in order to obtain a Franks hearing, defendant[ ] must make a 'substantial preliminary showing' that the false statements *originated with the government affiant*, not with the informants . . . ." United States v. Giacalone, 853 F.2d 470, 475-76 (6th Cir. 1988) (emphasis added). This means that when evaluating an affidavit, misrepresentations *to* the police are not controlling; rather, misrepresentations *by* the police to the issuing authority are focal. "Franks recognizes that information an affiant reports may not ultimately be accurate, and is willing to tolerate such a result at that early stage of the process, so long as the affiant believed the accuracy of the statement at the time it was made." Rodriguez-Suazo, 346 F.3d at 648. Collins does not allege that SA Brown made an intentionally false statement, only that the information

relayed to him by the Victim was false. This does not constitute a substantial preliminary showing under Franks. There is no allegation that SA Brown subjectively entertained serious doubts as to the truth of the Victim's accusations. To the contrary, the affidavit indicates that SA Brown believed that Collins had assaulted the Victim, was in possession of a firearm, and requested the warrant on an emergent basis to protect the Victim from further risk of harm. While Collins faults SA Brown for not having done more to independently verify the Victim's whereabouts on the date in question, "[a]llegations of [an agent's] negligence or innocent mistake are insufficient." United States v. Bateman, 945 F.3d 997, 1008 (6th Cir. 2019) (quoting Franks, 438 U.S. at 171). Consequently, Collins has not made a sufficient preliminary showing to require a Franks hearing.

## RECOMMENDATION

Based upon the aforementioned reasons, the undersigned **RECOMMENDS** that the Collins' motion to suppress evidence (DN 27) be **DENIED**.

*[Signature]*

H. Brent Brennenstuhl
United States Magistrate Judge

February 7, 2022

NOTICE

Under the provisions of 28 U.S.C. § 636(b)(1)(B) and FED. R. CRIM. P. 59(b)(1), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. FED. R. CRIM. P. 59(b)(2). "Failure to object in accordance with this rule waives a party's right to review." FED. R. CRIM. P. 59(b)(2).

February 7, 2022

H. Brent Brennenstuhl
United States Magistrate Judge

Copies:   Counsel of Record